|  |  |
|---|---|
| **STEVEN MELEIKA,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**JERSEY CITY MEDICAL CENTER,<br>CITY OF BAYONNE, AMGAD F.<br>MELEIKA, and LORIS MELEIKA,**<br><br>    **Defendants.** | Civ. No. 17-5759 (KM) (MAH)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

*Pro se* plaintiff Steven Meleika sued several entities and individuals in connection with his July 2017 hospitalization. Defendant the City of Bayonne, with leave of the Magistrate Judge assigned to this case, now moves for summary judgment. (DE 54).[1] For the following reasons, the motion is **GRANTED**.

### I.   BACKGROUND

#### A. Facts

On July 3, 2017, Officers Matthew Cannella and Robert Gordon of the Bayonne Police Department responded to a dispatcher's report that there was an emotionally disturbed person at a house on West 15th Street in Bayonne, New Jersey. (DE 54-7; DE 54-8 ¶ 3; DE 54-9 ¶ 3). Officer Cannella arrived first at the home and saw that the Jersey City Medical Center's mobile crisis unit was already there. (DE 54-9 ¶¶ 4 & 5).

Officer Cannella entered the house, where he saw Meleika suffering from what he determined was emotional distress. (DE 54-9 ¶ 6). Officer Gordon

---

[1]    "DE ___" refers to the docket entry number in this case.

arrived on scene shortly after and also noticed that Meleika was in distress. (DE 54-8 ¶¶ 4–6).

The medical first responders, with Meleika's consent, brought him outside to a waiting ambulance, intending to bring him to Jersey City Medical Center. (DE 54-8 ¶ 7; DE 54-9 ¶ 7). The paramedics asked Officer Cannella to accompany Meleika in the ambulance during the ride to the hospital, and Officer Cannella agreed. (DE 54-8 ¶ 8). Officer Cannella later remarked that Meleika was calm and did not fight or resist the paramedics during the ride to the hospital. (DE 54-9 ¶ 9). Officer Gordon followed the ambulance in his patrol car. (DE 54-8 ¶ 9).

After the ambulance arrived at Jersey City Medical Center, Meleika entered the hospital under his own volition. (DE 54-8 ¶ 9; DE 54-9 ¶ 9). Officer Cannella got into Officer Gordon's waiting patrol vehicle, and the two returned to Bayonne. (DE 54-8 ¶ 11; DE 54-9 ¶ 11). After that, Officers Gordon and Cannella had no further contact with Meleika. (DE 54-8 ¶ 12; DE 54-9 ¶ 12).

The two officers affirmed that during their brief interaction they did not use force against Meleika (DE 54-8 ¶ 13; DE 54-9 ¶ 13); that they did not behave maliciously towards him (DE 54-8 ¶ 15; DE 54-9 ¶ 15); that they did not involuntarily commit him to the hospital (DE 54-8 ¶ 14; DE 54-9 ¶ 14); that they did not misdiagnose him (DE 54-8 ¶ 16; DE 54-9 ¶ 16); and that they did not forcibly inject him, (DE 54-8 ¶ 17; DE 54-9 ¶ 17).

Meleika generally does not dispute Officer Gordon and Officer Cannella's accounts. In fact, his responses to the City's interrogatories reflect that he acknowledges that his grievance lies with the hospital—not the City or its police officers. (*See generally* DE 54-5 & DE 54-6).

### B. Procedural History

After his hospitalization, Meleika filed several lawsuits in connection with the incident.[2] On August 4, 2017, he filed this lawsuit against Jersey City

---

[2]     They are:

17-cv-1958 *Meleika v. Bayonne Police Department* (filed 3/22/17);

2

Medical Center, the Bayonne Police Department, and his parents, Amgad and Loris Meleika. (DE 1). Meleika alleged that he had been the victim of a false arrest, excessive force, malice, forced injections, and misdiagnosis and that he suffered $1,000,000 in damages. (DE 1).

On May 11, 2018, this Court notified defendant that the Bayonne Police Department is not an entity to be sued and that the City of Bayonne is the proper defendant. (DE 13). Meleika moved to amend his complaint to substitute the city for the police department. (DE14). On July 23, 2018 this Court granted the motion. (DE 16).

The City of Bayonne answered on October 9, 2018. (DE 17). Discovery ensued, and in light of Meleika's responses, the City of Bayonne requested leave to file a motion for summary judgment. (DE 37). The request was granted, and the City filed this motion on June 6, 2019. (DE 54). While this motion was pending, Meleika filed a notice of appeal to the U.S. Court of Appeals for the Third Circuit. (DE 68). The appeal has been docketed as No. 19-3014. (DE 70). What the notice consists of, however, is essentially a motion for entry of judgment in plaintiff's favor based on the statute of limitations and the Sixth Amendment right to a speedy trial.

There is no final, appealable decision disposing of all issues as to all parties. *See* 28 U.S.C. § 1291. I will therefore deal with the outstanding summary judgment motion.

In support of its motion for summary judgment, the City relies on records that were obtained and produced during discovery. They include affidavits by Officers Cannella and Gordon (DE 54-8 & DE 54-9); Meleika's responses to the City's interrogatories (DE 54-5 & DE 54-6); and the Bayonne

---

17-cv-1959 *Meleika v. Jersey City Police Department* (filed 3/22/17) (closed 1/31/19

17-cv-1960 *Meleika v. Hudson County Correctional Center* (filed 3/22/17);

17-cv-5759 *Meleika v. Jersey City Medical Center* (filed 8/4/17) (this lawsuit); and

19-cv-20916 *Meleika v. State of New Jersey* (filed 12/2/19).

Police Department's call-for-service report for the incident in question (DE 54-7). Meleika has not formally responded to the City's motion, but has filed with the Court over one-thousand pages of medical records. (DE 59). At one point he requested leave to file his own summary judgment motion, but leave was denied pending completion of fact discovery. Fact discovery is now complete, and the Magistrate Judge has authorized all parties to file motions for summary judgment on or before March 30, 2020. (DE 65, 77).

## II.   DISCUSSION AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of

material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Meleika, the nonmoving party, appears *pro se*. He has not filed papers in response that conform with the federal or local rules. The court may consider "grant[ing] summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 U.S. Dist. LEXIS 67320, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (*quoting Anchorage Assocs.*, 922 F.2d at 175)).

I am nevertheless mindful of the plaintiff's *pro se* status. Where, for example, "the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–521, (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). Meleika has made any number of filings in which he has stated his legal and factual positions. I have reviewed and considered them as his opposition to summary judgment, and have construed Meleika's pleadings and filings in the liberal spirit of *Haines*.

## B. Civil Rights Violations

Each count of the complaint seeks damages under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983; *see also Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Thus, a claim under § 1983 requires first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. False Arrest

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)). Closely

related is the tort of false imprisonment, which may cover the arrestee's subsequent detention. "[W]here an individual was arrested without probable cause, he 'has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" *Simpson v. Owner of Dollar Tree Store*, No. 09-6162, 2010 U.S. Dist. LEXIS 88027, 2010 WL 3364200 at *6 (E.D. Pa. Aug. 23, 2010) (quoting *Groman*, 47 F.3d at 636 (3d Cir. 1995) (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988))).

Meleika's claim for false arrest cannot proceed, because he was not arrested. In fact, his responses to the City's interrogatories tacitly admit that his claim against the City is unsustainable. He notes that "Plaintiff is claiming that . . . the Bayonne Police Department assisted in his removal and transport to the Jersey City Medical Center," (DE 54-5 ¶ 7), and that "[p]olice assist[ed] in transport to the medical center," (DE 54-6 ¶ 3). It is not disputed that Officers Gordon and Cannella helped transport Meleika to the hospital, after he willingly left his parents' house with the responding paramedics. That trip to the hospital, however, does not constitute an arrest, and the call-for-service report indicates that the police department's involvement ended upon Meleika and the officers' arrival at Jersey City Medical Center. (The report notes "SUBJ. TAKEN TO HOSPITAL.") (DE 54-7). Because Meleika was not arrested, his claim of false arrest cannot be sustained. It is **DISMISSED**.

### 2. Excessive Force

An excessive force claim is analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *See Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham*, 490 U.S. at 395; *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). The relevant inquiry is an objective one:

"whether the officer's actions are 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The U.S. Court of Appeals has elaborated, enumerating some relevant considerations:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenge conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

> *Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often faced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396.

*Couden*, 446 F.3d at 496–97.

Meleika's excessive-force claim is without merit, because the summary judgment record shows that Meleika was neither seized nor subjected to any force—excessive or otherwise—during his encounter with the police. Because there was no seizure, the reasonableness analysis is therefore unnecessary.

Officers Gordon and Cannella both affirmed that that their interaction with Meleika was peaceful and uneventful. Meleika has not sought to contradict those accounts. In fact, he conceded the officers' position, because his responses to the City's interrogatories demonstrate that the target of his excessive-force claim is the hospital—not the City or its police officers:

8

[Q:] Set forth any and all facts you will rely upon to support your claim that Defendant used excessive force against you.

[A:] Defendant Jersey City Medical Center are being accused of excessive forc[e] by giving forced injections, medications

(DE 54-5 ¶ 9).

[Q:] You failed to state the factual basis upon which you rely in alleging that the Bayonne Police Department used excessive force against you. Specifically address how the Bayonne Police Department used excessive force.

[A:] excessive forc[e] claim is against the medical center for strapping him down and inject. Drugs

(DE 54-6 ¶ 5).

Discovery establishes that there are no facts in support of an excessive force against the City, and that indeed Mr. Meleika is not asserting that claim against the City, but only against the hospital. Consequently, there are no remaining factual issues on this count. The claim is **DISMISSED** as against the City of Bayonne.

### 3. Malice

Meleika has alleged that the defendants committed "malice," but there is no such cause of action. I will assume that he may intended to assert against the City a claim of malicious prosecution, which, under 42 U.S.C. § 1983, requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273 , 295–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)); *see also Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*) (adopting elements of the common law tort for purposes of § 1983).

Meleika cannot sustain a cause of action for malicious prosecution, because the record shows that the officers' involvement did not lead to a prosecution. Officers Gordon and Cannella both affirmed that Meleika was a free man when he and they parted ways at the hospital. Meleika has not rebutted these affirmations, by producing an arrest report, a bill of indictment, or any other evidence of his prosecution. Because a criminal proceeding is a necessary feature of a malicious prosecution, its absence here requires that the claim be **DISMISSED** as against the City.

### 4. Forced Injections

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. The "touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). The Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979); *see also In Vitek v. Jones*, 445 U.S. 480, 492 (1980)(transfer of state prisoner to a mental hospital implicates due process); *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975) (mentally ill individuals cannot be confined if they are not dangerous); *Brandt v. Monte*, 626 F.Supp.2d 469, 475 (D.N.J. 2009) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)) ("[P]atients committed to state custody have a constitutionally protected liberty interest [under the Fourteenth Amendment] in being free from unreasonable bodily restraints."). That liberty interest includes the right to refuse administration of anti-psychotic drugs. *See Rennie v. Klein*, 720 F .2d 266, 269 (3d Cir. 1983) (applying Youngberg and concluding that involuntarily committed patients have a constitutional right to refuse treatment).

Meleika has not shown any evidence that the municipal defendants forcibly injected him. In response to the City's interrogatories, Meleika alleged

10

that employees of the Jersey City Medical Center—not Officers Gordon and Cannella—injected him against his will:

> [Q]: Identify when Defendant forcedly injected you.
>
> [A:] Medical records documents timeline
>
> [Q]: Identify where Defendant forcedly injected you.
>
> [A:] Injections in his arms
>
> [Q]: *Identify who forcedly injected you.*
>
> [A:] *Medical Professionals*
>
> [Q]: *Identify how, as police officers, Defendant forcedly injected you.*
>
> [A:] *Police did not inject, they assisted in transport, by using force escorting and riding in the ambulance*
>
> [Q]: How Defendant damaged you [sic].
>
> [A:] Punitive damages for violating his civil rights.

(DE 54-5 ¶ 13) (emphasis added). Moreover, the officers affirmed that they did not forcibly inject Meleika and that they had no further contact with him after he entered the hospital. Accordingly, Meleika has failed to show a genuine issue of fact as to his forced-injection contention, and the claim is **DISMISSED** as against the City.

### 5. Misdiagnosis

Mr. Meleika claims that his condition was misdiagnosed.[3] Officers Gordon and Cannella, however, are not medical professionals and there are no facts linking them to Meleika's diagnosis. Meleika himself, in his responses to

---

[3]    In general, a mere misdiagnosis claims would be a state- law claim of medical malpractice or medical negligence, and would not be actionable under § 1983. *See White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) (allegations of medical malpractice are not sufficient to establish a constitutional violation); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *DeJesus v. Correctional Med. Servs. Inc.*, 574 F. App'x at 66, 68–69 (3d Cir. 2014).

the City's interrogatories, acknowledges that this claim is not even aimed at the municipal defendants:

[Q]: Identify when Defendant misdiagnosed you.

[A:] Discovery request will Provide exact Dates.

[Q]: *Identify where Defendant misdiagnosed you.*

[A:] *Jersey City medical Center*

[Q]: *Identify who misdiagnosed you.*

[A:] *Jersey City medical Professionals*

[Q]: Identify how, as police officers, Defendant misdiagnosed you.

[A:] Police officers seized Plaintiff by assisting medical professionals with disregard to Plaintiff right.

[Q]: How Defendant damaged you [sic].

[A:] By violating the Plaintiffs civil rights.

(DE 54-5 ¶ 14) (emphasis added). Accordingly, the misdiagnosis claim is both legally and factually untenable. It is **DISMISSED** as against the City of Bayonne.

## III.  CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE 54) is **GRANTED** and the case is dismissed in its entirety as against the City of Bayonne. A separate order will issue.

A separate order will issue.

Dated: February 7, 2020

**Hon. Kevin McNulty**
**United States District Judge**