UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN MELEIKA,<br><br>    Plaintiff,<br><br>v.<br><br>JERSEY CITY MEDICAL CENTER, CITY OF BAYONNE, AMGAD F. MELEIKA, and LORIS MELEIKA,<br><br>    Defendants. | Civ. No. 17-5759 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiff Steven Meleika sued several entities and individuals in connection with his July 2017 hospitalization. Now before the Court are the competing motions for summary judgment filed by defendant Jersey City Medical Center (DE 81)[1] and plaintiff Meleika (DE 83). Also before the Court is Jersey City Medical Center's previously-filed motion to dismiss the complaint on the pleadings. (DE 73). For the following reasons, Defendant's motion for summary judgment is **GRANTED**; Meleika's motion for summary judgment is **DENIED**; and Defendant's motion for judgment on the pleadings is **DENIED** as moot.

**I.  BACKGROUND**

   **A. Facts**

On July 3, 2017, Officers Matthew Cannella and Robert Gordon of the Bayonne Police Department responded to a dispatcher's report that there was an emotionally disturbed person at a house on West 15th Street in Bayonne, New Jersey. (DE 54-7; DE 54-8 ¶ 3; DE 54-9 ¶ 3). Officer Cannella arrived at the home to find that Jersey City Medical Center's mobile crisis unit was already there. (DE 54-9 ¶¶ 4 & 5).

---

[1]    "DE ___" refers to the docket entry number in this case.

Officer Cannella entered the house, where he saw Meleika suffering from what he determined was emotional distress. (DE 54-9 ¶ 6). Officer Gordon arrived on scene shortly thereafter and also noticed that Meleika was in distress. (DE 54-8 ¶¶ 4–6).

The medical first responders, with Meleika's consent, brought him outside to a waiting ambulance, intending to bring him to Jersey City Medical Center. (DE 54-8 ¶ 7; DE 54-9 ¶ 7). The paramedics asked Officer Cannella to accompany Meleika in the ambulance during the ride to the hospital, and Officer Cannella agreed. (DE 54-8 ¶ 8). Officer Cannella later remarked that Meleika was calm and did not fight or resist the paramedics during the ride to the hospital. (DE 54-9 ¶ 9). Officer Gordon followed the ambulance in his patrol car. (DE 54-8 ¶ 9).

After the ambulance arrived at Jersey City Medical Center, Meleika entered the hospital of his own volition. (DE 54-8 ¶ 9; DE 54-9 ¶ 9). At the hospital, Meleika's mother provided caregivers the following details:

- Meleika's parents had called 911 because they had seen him talking loudly to himself, eventually screaming at and threatening his parents.
- Meleika had in the past obtained a firearm in Florida and returned to New Jersey where he confronted others and, on one occasion, someone was shot in the shoulder.
- Meleika had been charged with attempted murder but pled to a lesser charge and had been incarcerated for eighteen months.
- During his incarceration, he had received mental health treatment but stopped taking medications after he was released.
- Meleika's mother told caregivers that he was aggressive while at home and that she worried that if were released from the hospital he would return to Florida to obtain another firearm.

(DE 82-1; DE 82-2 at 55:1 to 57:14).

Jersey City Medical Center initiated an initial forty-eight-hour hold, during which Meleika was evaluated by two psychiatrists, Dr. Inci Bijan and

Dr. Aparna Roate. (DE 82-4 & DE 82-5). Both determined that Meleika's psychiatric state constituted a danger to himself and to others and on July 6, 2017 petitioned the municipal court for an order of involuntary commitment for psychiatric treatment (DE 82-4 & DE 82-5). On July 7, the court entered a temporary order to that effect. (DE 81-5).

Meleika's treating psychiatrist ordered an antipsychotic medication for Meleika, to be administered orally or intramuscularly if he refused the oral dosage. (DE 82-6). Meleika later testified that the hospital's diagnosis of him—bipolar depression—was correct and that keeping him in the hospital was in good faith. (DE 82-2 at 26:23–27:3 & 31:12–20). During his stay, Jersey City Medical Center honored his refusals whenever he declined non-psychiatric medication or testing. (DE 82-2 60:14–19). The staff always offered to orally administer his antipsychotic medication and only administered it by injection when he refused the oral option. (DE 82-2 60:20–61:4). Meleika remained at Jersey City Medical Center from July 3 until July 11, 2017. (DE 81-4).

## B. Procedural History

After his hospitalization, Meleika filed several lawsuits in connection with the incident.[2] On August 4, 2017, he filed this lawsuit against Jersey City Medical Center, the Bayonne Police Department, and his parents, Amgad and Loris Meleika. (DE 1). Meleika alleged that he had been the victim of a false arrest, excessive force, malice, forced injections, and misdiagnosis. He seeks $1,000,000 in damages. (DE 1).

Jersey City Medical Center answered the complaint on May 10, 2019. (DE 41). On November 5, 2019, with leave of the Magistrate Judge overseeing

---

2   They are:

   17-cv-1958 *Meleika v. Bayonne Police Department* (filed 3/22/17);

   17-cv-1959 *Meleika v. Jersey City Police Department* (filed 3/22/17) (closed 1/31/19)

   17-cv-1960 *Meleika v. Hudson County Correctional Center* (filed 3/22/17);

   17-cv-5759 *Meleika v. Jersey City Medical Center* (filed 8/4/17) (this lawsuit);

   19-cv-20916 *Meleika v. State of New Jersey* (filed 12/2/19).

this case (DE 71), Jersey City Medical Center moved for judgment on the pleadings. (DE 73).

Fact discovery began and ended, however, and the Magistrate Judge authorized all parties to file motions for summary judgment before March 30, 2020. (DE 77). On February 7, 2020, I issued an opinion and order granting the motion for summary judgment filed by the City of Bayonne and dismissing all claims against it. (DE 78 & DE 79). On February 19, 2020, Jersey City Medical Center moved for summary judgment. (DE 81). Meleika, on March 18, 2020, also filed a motion for summary judgment. (DE 83).

Before the now-pending motions were filed, Meleika filed a notice of appeal to the U.S. Court of Appeals for the Third Circuit. (DE 68). The appeal has been docketed as No. 19-3014. (DE 70). What the "notice" consists of, however, is a demand that judgment be entered in Meleika's favor based on the statute of limitations (Meleika is the plaintiff), and the Sixth Amendment right to a speedy trial in a criminal case (this is a civil case).[3] There is no final,

---

3    I predict that the Court of Appeals would treat this notice of appeal as frivolous, and therefore insufficient to divest this Court of jurisdiction:

> There are few circumstances in which a district court may continue to exercise authority over a case after the filing of a notice of appeal, an "event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control over ... the case." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-59 (1982). A district court may proceed if the appeal is patently frivolous, if the notice of appeal relates to a non-appealable order or judgment, or if the appeal is taken in bad faith and would result in unwarranted delay. *See United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980) (patently frivolous); *Mondrow v. Fountain House*, 867 F .2d 798 (3d Cir. 1989) (non-appealable order or judgment); and *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir.1988) (bad faith).

*United States v. McIntyre*, No. 02:04CR0050, 2006 WL 1330202, at *1 (W.D. Pa. May 15, 2006).

If my prediction is incorrect, however, this decision may be treated as an "indicative ruling" and the Court of Appeals may, within its discretion, order a limited remand under Rule 62.1: [fn. cont'd next page]

appealable decision disposing of all issues as to all parties, and no indication that an interlocutory appeal would be appropriate. *See* 28 U.S.C. § 1291. I will therefore deal with the outstanding motions filed by Meleika and Jersey City Medical Center.

In support of its motion for summary judgment, Jersey City Medical Center relies on records that were obtained and produced during discovery. They include affidavits by Officers Cannella and Gordon (DE 54-8; DE 54-9; DE 81-2 & DE 81-3); the hospital's records of its treatment of Meleika (DE 82-1; DE 82-3 & DE 82-6); clinical screening documents produced in connection with the decision to involuntarily commit Meleika (DE 82-4 & DE 82-5); the temporary order for involuntary commitment to treatment of an adult issued by Judge Kelly Austin of the municipal court in Hudson County (DE 81-5); Meleika's deposition testimony (DE 82-2); Meleika's responses to the hospital's interrogatories (DE 81-4); and the hospital's responses to Meleika's interrogatories (DE 81-6).

Meleika has not formally responded to the hospital's motion, but he earlier filed with the Court over one thousand pages of medical records. (DE 59). His summary judgment motion reads, in its entirety:

> The plaintiff brings to the court a lawsuit against the defendants for civil rights violations. There is sufficient discovery to prove that the defendants violated the plaintiffs fourth amendment right. The plaintiff established enough evidence to prove the elements of malicious prosecution. The defendants acted in a manner that does constitute negligence but malice. The defendants lacked probable cause. The plaintiff did not request medical treatment. The plaintiff is a victim of Swatting is a criminal harassment tactic

---

Federal Rule of Civil Procedure 62.1 provides that when a motion is made for relief that the district court lacks authority to grant due to a pending appeal, the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1.

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers' Statewide Benefit Funds*, No. CV 18-16328-KM-MAH, 2019 WL 3812889, at *6 (D.N.J. Aug. 14, 2019).

of deceiving an emergency service (via such means as hoaxing an emergency services dispatcher) into sending a police and emergency service response team to another person's address. This is triggered by false reporting of a serious law enforcement emergency, such as a bomb threat, murder, hostage situation, or a false report of a "mental health" emergency, such as reporting that a person is allegedly suicidal or homicidal and may or may not be armed. For good cause shown the plaintiff requests the court grant plaintiffs motion for summary judgment.

(DE 83 at 1). Appended to the motion is the Wikipedia article for "Swatting." (DE 83 at 2–27).

## II. DISCUSSION AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at

248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

  Meleika appears *pro se.* He has not filed papers in response that conform with the federal or local rules. The court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 U.S. Dist. LEXIS 67320, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in

7

connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (*quoting Anchorage Assocs.*, 922 F.2d at 175)).

I am nevertheless mindful of the plaintiff's *pro se* status. Where, for example, "the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–521, (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). Meleika has made any number of filings in which he has stated his legal and factual positions. I have reviewed and considered them as his opposition to summary judgment and have construed Meleika's pleadings and filings in the liberal spirit of *Haines*.

### B. Civil Rights Violations

Each count of the complaint seeks damages under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983; *see also Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Thus, a claim under § 1983 requires first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Meleika has not produced any evidence to show that Jersey City Medical Center was acting under color of state law.[4] In fact, several of the

---

[4] Meleika fails to adduce evidence that Jersey City Medical Center is a state actor, which alone would be fatal to his claim. I have verified that since 1988, it has

8

constitutional causes of action that he now asserts—false arrest, excessive force, and what he terms as malice but what I analyze as malicious prosecution—can by their very nature only be perpetrated by state actors. This deficiency in Meleika's evidence is by itself fatal to his § 1983 claim against the hospital. However, in light of Meleika's *pro se* status, I briefly analyze these claims.

### 1. False Arrest

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)). Closely related is the tort of false imprisonment, which may cover the arrestee's subsequent detention. "[W]here an individual was arrested without probable cause, he 'has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" *Simpson v. Owner of Dollar Tree Store*, No. 09-6162, 2010 U.S. Dist. LEXIS 88027, 2010 WL 3364200 at *6 (E.D. Pa. Aug. 23, 2010) (quoting *Groman*, 47 F.3d at 636 (3d Cir. 1995) (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988))).

---

been a private entity. https://www.rwjbh.org/jersey-city-medical-center/about/our-history/. It is currently part of the RWJBarnabas healthcare network. https://www.rwjbh.org/our-locations/. *See also Deswolkien v. Liberty Health Servs.*, No. CIV. 06-1507 (JLL), 2006 WL 1084084, at *3 (D.N.J. Apr. 24, 2006) ("Here, Plaintiff asserts that Liberty Health Services, which operates the Jersey City Medical Center, caused Plaintiff's abduction and detention for several days in 2004 and again in 2006. However, nothing in the Complaint supports an inference that Liberty Health Services, a private non-profit entity, was a state actor or that the kidnapping and detention were "fairly attributable to the State." *Lugar*, 457 U.S. at 937. Because the Complaint does not show that Defendant was acting under color of state law when it had Plaintiff abducted and detained, the Court lacks federal question jurisdiction based on a § 1983 claim.")

The Bayonne Police Department's call-for-service report notes "SUBJ. TAKEN TO HOSPITAL.") (DE 54-7). Even if that could be regarded as an arrest, it would not implicate this defendant in a § 1983 claim. Jersey City Medical Center is not a state actor, and a claim of arrest without probable cause is not properly directed at the hospital to which the arresting officers brought the plaintiff. (DE 82-2 at 27:4–7). The claim is **DISMISSED**.

### 2. Excessive Force

An excessive force claim is analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham*, 490 U.S. at 395; *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). The relevant inquiry is an objective one: "whether the officer's actions are 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The U.S. Court of Appeals for the Third Circuit has elaborated, enumerating some relevant considerations:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into

10

>consideration the fact that "police officers are often faced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396.

*Couden*, 446 F.3d at 496–97.

Meleika's excessive force claim, brought under 28 U.S.C. § 1983, is contingent on a violation of federal civil rights committed under color of state law. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Id.* There is no evidence in the record that suggests that Jersey City Medical Center acted under color of state law. Whatever the merits of Meleika's remaining tort claims are, § 1983 does not provide him a remedy against this private healthcare facility. Because Jersey City Medical Center was not acting under color of law, Meleika's excessive-force claim is without merit and must be **DISMISSED**.[5]

### 3. Malice

Meleika has alleged that Defendants committed "malice," but there is no such cause of action. I will assume that he intended to assert a claim of malicious prosecution, which, under 42 U.S.C. § 1983, requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

---

[5] At any rate, Jersey City Medical Center did not arrest Meleika, forcibly or otherwise. To some degree, Meleika's excessive-force claim against the hospital is conflated with his forced-injections claim against the same. (*See* DE 54-6 ¶ 5 ("[E]xcessive forc[e] claim is against the medical center for strapping him down and inject. Drugs.")). The forced-injections claim is analyzed at Section II.B.4., *infra*.

11

proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273 , 295–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)); *see also Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*) (adopting elements of the common law tort for purposes of § 1983).

Meleika cannot sustain a cause of action for malicious prosecution, because the record shows that the officers' involvement did not lead to a prosecution. Officers Gordon and Cannella both affirmed that Meleika was a free man when he and they parted ways at the hospital. Meleika has not rebutted these affirmations, by producing an arrest report, a bill of indictment, or any other evidence of his prosecution. In any event, there was no criminal proceeding that involved this defendant, Jersey City Medical Center. Because a criminal proceeding is a necessary feature of a malicious prosecution, its absence here requires that the claim be **DISMISSED**.

### 4. Forced Injections

I will evaluate Meleika's forced-injections claim in the context of the Fourteenth Amendment's Due Process Clause, the source of rights that best fits these allegations. The state action requirement of a § 1983 claim is implicated here because the medical treatment was authorized by the municipal judge's involuntary commitment order. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. The "touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). The Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979); *see also In Vitek v. Jones*, 445 U.S. 480, 492 (1980)(transfer of state prisoner to a mental hospital implicates due process); *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975) (mentally ill individuals cannot be confined if they are not dangerous); *Brandt v. Monte*, 626 F.Supp.2d 469, 475 (D.N.J. 2009) (citing

12

*Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)) ("[P]atients committed to state custody have a constitutionally protected liberty interest [under the Fourteenth Amendment] in being free from unreasonable bodily restraints."). That liberty interest includes the right to refuse administration of anti-psychotic drugs. *See Rennie v. Klein*, 720 F .2d 266, 269 (3d Cir. 1983) (applying Youngberg and concluding that involuntarily committed patients have a constitutional right to refuse treatment).

A patients' right to refuse antipsychotic medication is not absolute and must yield when the patient or others are endangered:

> In New Jersey, the standard by . . . a mentally ill patient who has been committed involuntarily to a state institution, *see State v. Krol*, 68 N.J. 236 (1975), must have his constitutional right to refuse antipsychotic drugs measured, is whether the patient constitutes a danger to himself or to others. Because that evaluation must be the product of the medical authorities' professional judgment, such a judgment and the resulting decision to administer medication will be presumed valid unless it is shown to be a "substantial departure from accepted professional judgment, practice or standards." *Youngberg*, 457 U.S. at 323. One of the factors to be considered in the exercise of professional judgment—albeit not a controlling or necessarily determinative factor—is whether and to what extent the patient will suffer harmful side effects. I believe that the professional judgment standard established by the Supreme Court in *Youngberg* sets the limits within which this factor must be assessed.
>
> . . . I would hold only that antipsychotic drugs may be constitutionally administered to an involuntarily committed mentally ill patient whenever, in the exercise of professional judgment, such an action is deemed necessary to prevent the patient from endangering himself or others. Once that determination is made, professional judgment must also be exercised in the resulting decision to administer medication.

*Rennie*, 720 F.2d at 269–270 (footnotes omitted). Under the circumstances here, neither Jersey City Medical Center nor the treating physicians violated Meleika's due process rights because the evidence reveals that he did present a danger both to himself and to others. Upon his arrival at the hospital, Meleika's

13

mother told hospital officials that Meleika had threatened his parents and broken things in the home. She described a pattern of behavior that included obtaining a firearm, threatening others, a gunshot wound to another, and an ensuing charge of attempted murder. Meleika's mother also expressed concern that he would once again obtain a firearm in Florida and return with it to New Jersey. The circumstances as described by this account warrant the decision to authorize the administration over objection of antipsychotic medications.

The municipal judge's decision to allow—and the treating physicians' decision to administer—non-consensual intramuscular injections is further buttressed by the professional judgments of Drs. Bijan and Roate that Meleika's mental illness made him a danger to himself and others. In light of that determination, the doctors advised that Meleika should be administered certain antipsychotic medications—over his objection if necessary. The record shows that each time the medications were administered, Meleika had the option to take them orally and that physicians only injected him if he refused the oral option. Meleika testified that the involuntary commitment order and the doctors' prescription, in effect, meant that his refusal to orally take the drugs carried no practical weight because he would ultimately be subjected to forced injections. Nonetheless, the record contains ample evidence that the physician's conduct rested upon professional judgment that weighed Meleika's interest against his risk of harm. Meleika has presented no evidence that suggests that the decision to involuntarily treat him was a substantial departure from the standards associated with treatment of a patient shown to be a danger to himself and others. Nor did the hospital or its physicians violate any constitutional standard when they simply did what the court order authorized them to do. Accordingly, Meleika's claim based on forced injections is **DISMISSED**.

### 5. Misdiagnosis

Meleika's claim that he was misdiagnosed is both legally and factually deficient. A misdiagnosis claim is essentially a state-law claim of medical

malpractice or medical negligence and is not actionable under § 1983. *See White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) (allegations of medical malpractice are not sufficient to establish a constitutional violation); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *DeJesus v. Correctional Med. Servs. Inc.*, 574 F. App'x at 66, 68–69 (3d Cir. 2014).

Jersey City Medical Center is not itself a state actor. More pertinently, Meleika admitted under oath that Jersey City Medical Center's diagnosis of bipolar disorder was accurate. (DE 82-2 at 31:12–20). Having conceded that the treating physicians accurately assessed his condition, Meleika cannot now maintain his misdiagnosis claim. Because federal law does not provide a remedy and because Meleika has conceded the central point of this cause of action, the misdiagnosis claim must be **DISMISSED**.

### III.   CONCLUSION

For the reasons set forth above, Jersey City Medical Center's motion for summary judgment (DE 81) is **GRANTED**; Meleika's motion for summary judgment (DE 83) is **DENIED**; and Jersey City Medical Center's motion for judgment on the pleadings (DE 73) is **DENIED** as moot.

A separate order will issue.

Dated: May 4, 2020

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**